Shirley BROWN, Appellant,

v.

Jayne HORNSTEIN, Appellee.

No. 94–CV–1129.

District of Columbia Court of Appeals.

Argued Oct. 11, 1995.

Decided Jan. 4, 1996.

Carol S. Blumenthal, Washington, DC, for appellant.

Michael E. Brand, Washington, DC, with whom Ricardo V. Johnson, Riverdale, MD, was on the brief, for appellee.

Before SCHWELB, KING, and RUIZ, Associate Judges.

SCHWELB, Associate Judge:

On July 26, 1994, following a non-evidentiary hearing, the trial court granted the motion of Jayne Hornstein (Landlord) to enforce a settlement agreement in a suit for possession brought by Ms. Hornstein against Shirley Brown (Tenant). The court entered judgment of possession in favor of Landlord. On appeal, Tenant contends that enforcement of

the agreement deprived her of rights protected by the "tenant opportunity to purchase" statute (TOTPS). *See* D.C.Code §§ 45–1631 to –1642 (1990). We disagree and affirm.

## I.

On December 30, 1990, the parties entered into a residential lease agreement for property located at 703 Delaware Avenue, S.W. in Washington, D.C. In May 1993, Landlord, who is a member of the armed forces, returned to the District from an overseas assignment. In June 1993, Landlord served Tenant with, *inter alia,* a thirty-day "Notice to Cure Violation of Tenancy or Vacate," alleging "continual late and delinquent payment of rent." *See* D.C.Code § 45–2551(b) (1990). On August 5, 1993, Landlord filed suit for possession in the Superior Court, alleging that Tenant had failed to vacate the premises after the notice had expired.

In response to Landlord's efforts to recover possession, Tenant filed a petition with the Rental Accommodations and Conversion Division (RACD) of the District of Columbia Rental Housing Commission. A hearing was scheduled before the RACD on September 22, 1993. On that day, the parties, each of whom was represented by counsel, entered into a fourteen-paragraph "Stipulation of Settlement" which resolved both Landlord's lawsuit and Tenant's administrative complaint. Under the terms of the stipulation, Tenant was required to surrender possession of the premises "in any event, no later than June 30, 1994." The agreement recognized Landlord's right to attempt to sell the house, and Tenant was required to cooperate in the sales process. The settlement provided that if Landlord accepted a contract of sale, she could require Tenant to vacate on sixty days written notice. Under the agreement, Tenant had the right to vacate the premises at the end of any calendar month on two weeks written notice. The agreement further provided that if Tenant failed to vacate as required, Landlord would be entitled, on motion, to a nonredeemable judgment of possession. Finally, the parties agreed that the stipulation "resolves all rights of the parties under the Landlord–

Tenant relationship except the security deposit (referred to above) and the parties generally and mutually release one another from any and all claims other than as reserved herein." The stipulation did not address any rights which Tenant might have under the TOTPS.

The Stipulation of Settlement was approved by a hearing examiner of the RACD. On October 15, 1993, Tenant's complaint to that agency was dismissed with prejudice "pursuant to the settlement agreement signed by the parties."

At some time after the execution of the Stipulation of Settlement, Landlord entered into an agreement to sell the property to a third party. On March 29, 1994, Landlord sent a notice to Tenant advising her of the contract of sale and instructing Tenant to vacate within sixty days. Landlord did not provide Tenant with an opportunity to purchase pursuant to the TOTPS.

Notwithstanding Landlord's demand for possession, Tenant was still residing in Landlord's house on June 30, 1994, the date by which the agreement required her to vacate "in any event." On July 1, 1994, Landlord filed a motion for judgment in which she sought enforcement of the agreement.

A non-evidentiary hearing was held on Landlord's motion on July 23, 1994. Tenant's attorney acknowledged the provision of the Stipulation of Settlement requiring Tenant to vacate the premises. Counsel contended for the first time, however, that the agreement denied Tenant rights protected by the TOTPS. Counsel for Landlord countered that the TOTPS was irrelevant, that the Stipulation of Settlement made no reference to it, and that Tenant's rights, if any, arose under the TOTPS itself rather than under the agreement. He also stated that the contract of sale had "fallen through," and that in light of that development, Landlord had made no attempt to enforce the sixty-day notice based on the proposed sale. Rather, Landlord was relying exclusively on the provision in the agreement requiring Tenant to vacate no later than June 30, 1994. Landlord's attorney emphasized that Tenant was

not entitled to repudiate an agreement after having enjoyed its fruits.

The judge granted Landlord's motion to enforce the Stipulation of Settlement. She stated that although the TOTPS "may have at one time been called into play ... the sequence of events [since then] may not make it applicable after all. But in any event there is no contract [for the sale of the premises]." Concluding that under these circumstances, there was no conflict between the Stipulation of Settlement and the TOTPS, the judge entered judgment of possession in Landlord's favor. This appeal followed.

## II.

■ Landlord first asks us to dismiss the appeal as moot because Tenant is no longer in possession. We have held, however, that a tenant's involuntary departure from the landlord's property does not render an appeal moot. *Joyner v. Jonathan Woodner Co.*, 479 A.2d 308, 310 (D.C.1984); *Zanakis v. Brawner Bldg., Inc.*, 377 A.2d 67, 68–69 (D.C.1977). In this case, Tenant vacated the premises under compulsion of an order of the court. Had she defied that order, she might well have found her belongings on the street. Her departure was thus involuntary.

■ Landlord's attorney advised us at oral argument that the property in question was sold during the pendency of this appeal. Nevertheless, the record before us does not warrant dismissal of the appeal as moot. Landlord did not move to supplement the record on appeal to reflect the alleged sale of the premises. Statements of counsel are not evidence, and the claim of mootness must fail "because nowhere in the record is there any evidence that the property ha[s] been sold." *DeFoe v. Weaver Bros., Inc.*, 108 A.2d 94, 95 (D.C.1954). Accordingly, we turn to the merits of the appeal.

## III.

Tenant argues that the judgment granting Landlord's motion to enforce the Stipulation of Settlement violated her rights under the TOTPS. She relies primarily on D.C.Code § 45–1631(a), which reads as follows:

> Before an owner of a housing accommodation may sell the accommodation, or issue a notice of intent to recover possession, or notice to vacate, for purposes of demolition or discontinuance of housing use, the owner shall give the tenant an opportunity to purchase the accommodation at a price and terms which represent a bona fide offer of sale.

Tenant contends that she has the right to invoke the TOTPS, notwithstanding the Stipulation of Settlement, because the statute makes her opportunity to purchase non-waivable:

> An owner shall not request, and a tenant may not grant, a waiver of the right to receive an offer of sale under this subchapter. An owner shall not require waiver of any other right under this subchapter.

*Id.* § 45–1636

■ The TOTPS confers important protections upon tenants. These protections are to be generously construed "toward the end of strengthening the legal rights of tenants or tenant organizations to the maximum extent permissible under law." *See id.* § 45–1661. Nevertheless, we cannot agree with Tenant that the statute permits her to repudiate her Stipulation of Settlement under the particular circumstances of this case.

There is no reference in the Stipulation of Settlement to the TOTPS. Nothing in the parties' agreement purported to excuse Landlord from complying with the TOTPS if the protections of that statute apply to a person in Tenant's circumstances.[1] If Landlord was obligated to provide Tenant with an opportunity to purchase, her failure to do so violated the TOTPS, not the agreement. Accordingly, Tenant's remedy was to seek enforcement of the statute, rather than to repudiate a negotiated agreement in a separate and somewhat tenuously related case. Ten-

---

1. Our disposition of this appeal makes it unnecessary for us to address, *inter alia,* the question whether the TOTPS protects a tenant who has been sued for possession for allegedly violating her obligations under the lease and who then settles the case without a resolution of the question whether she was in default.

ant has not shown why any rights that she may have had under the TOTPS entitled her to remain in possession notwithstanding her agreement. The subject matter of the landlord-tenant proceeding was the right to possession, not the opportunity to purchase the property.

In spite of the lack of any reference to the TOTPS in the Stipulation of Settlement, Tenant apparently asserts that her right to notice under the TOTPS implicitly created a corollary right to remain on the premises regardless of her agreement to depart. The statute makes no reference to a right to continued possession. We note, on the other hand, that as a practical matter, it makes little sense to require a tenant to move out on June 30 if she would have the right to match the third party's offer to purchase the property and to resume possession soon after her departure. In this case, however, we need not decide whether the TOTPS creates an implied right of continued possession, for even if it does, Tenant cannot prevail.

## IV.

■ With the single exception of the security deposit, the settlement agreement, by its express terms, resolved all claims between the parties arising out of the landlord-tenant relationship. The agreement expressly contemplated the sale of the premises during the period when Tenant was to remain in possession. As a result of the agreement, and in reliance upon it, Landlord gave up the right to recover possession of her home for a substantial period of time.[2]

Tenant, for her part, accepted the benefits which the agreement conferred upon her. Had there been no settlement, Tenant would have been compelled to defend Landlord's suit for possession. If that suit had been successful, Tenant would have been required to surrender possession forthwith. As a result of the settlement, however, Tenant was able to remain in Landlord's house through the end of June 1994—a period of nine months after the case was settled. During

that period, she had the right to move out at the end of any calendar month, provided that she gave Landlord two weeks notice. Tenant thus bargained for, and received, the right to an extended period of peaceful enjoyment of a residence which she might otherwise have had to vacate immediately.

■ As this court stated more than forty years ago, "[t]he general rule is that a compromise and settlement agreement operates as a merger of and bars the right to recovery on any claim included therein." *McGee v. Marbury,* 83 A.2d 157, 159 (D.C. 1951). The law favors the settlement of controversies, and a compromise agreement will be enforced just like any other contract. *Goozh v. Capitol Souvenir Co., Inc.,* 462 A.2d 1140, 1142 (D.C.1983). "Although a court may set aside a stipulation where justice requires, parties generally are bound by their stipulations, and a stipulation deliberately entered into by parties for final disposition of their controversy ought not to be lightly set aside." *Id.* (quoting *Maiatico v. Novick,* 108 A.2d 540, 541 (D.C.1954)).

It is undisputed—indeed, it is indisputable—that if the Stipulation of Settlement was valid and binding, then the trial court had the authority, pursuant to the agreement, to award possession to Landlord. Tenant's contention that the stipulation is unenforceable amounts to a demand that the court declare its nullity and rescind it. *See Ward v. Deavers,* 92 U.S.App.D.C. 167, 170, 203 F.2d 72, 75 (1953). But Tenant first attempted to repudiate the agreement in July 1994, after the expiration of the period during which she had the right to remain on the premises. She made no allegation that the Stipulation of Settlement was invalid during the time that she was enjoying the bargained-for benefit which the agreement bestowed upon her, namely, the right to remain in possession until June 30, 1994.

We note that there is no suggestion, and Tenant makes no claim, that the Stipulation of Settlement was illegal or void on its face at the time it was negotiated. If the agreement

---

2. In May 1993, Landlord served Tenant not only with the 30–day notice to quit or cure for late and delinquent payment of rent, but also with a 90–day notice in which she stated that she proposed to use the premises as her own residence. In the Stipulation of Settlement, Landlord effectively abandoned this plan for the immediate future.

had been void at its inception, then even Tenant's enjoyment and retention of benefits under it would not preclude her from asserting its illegality. *See, e.g. Brown v. Gesellschaft Fur Drahtlose Telegraphie,* 70 App. D.C. 94, 96 n. 10, 104 F.2d 227, 229 n. 10, cert. denied, 307 U.S. 640, 59 S.Ct. 1038, 83 L.Ed. 1521 (1939); *Williams v. Caruso Enterprises, Inc.,* 140 Cal.App.2d Supp. 973, 295 P.2d 592, 596–97 (1956); 17 C.J.S. *Contracts* § 280, at 1212 (1963 & Supp.1995). But the Stipulation of Settlement does not, by its terms, contravene the TOTPS. Indeed, as we have noted, the Stipulation of Settlement does not address the question whether Tenant was or was not entitled to notice under that statute. The agreement could have been implemented by both parties whether or not such notice was provided.

Even if we were to assume, *arguendo,* that the Stipulation of Settlement came into conflict with the TOTPS, this conflict arose when Landlord, having entered into a contract of sale, failed to provide Tenant with an opportunity to match the terms of the contract and purchase the house. Tenant claims that the contract became voidable as a result of this failure on the part of Landlord, but there can be no plausible contention that the agreement was void before this alleged noncompliance with TOTPS occurred.

There being no reasonable basis for concluding that the Stipulation of Settlement was void, as opposed to voidable, Tenant may not repudiate her agreement after having enjoyed its fruits. *Williams, supra,* 295 P.2d at 596–97. Here, as in *Friedman v. Kennedy,* 40 A.2d 72 (D.C.1944),

> [i]t was by means of the instrument sought to be rescinded that the tenant obtained [3] possession. Can [she] abrogate [her agreement] but retain the benefits received under it? A well settled principle of the law of rescission is that one may not rescind in part and affirm in part; rescission must be *in toto;* and one may not rescind an agreement and at the same time retain the consideration received for its execution.... [She] cannot treat the contract as rescinded for the purpose of escaping obligations under it, and at the

same time treat it as subsisting for the purpose of claiming benefits, or for any reason treat it as abrogated and as existing at the same time.

*Id.* at 75 (citations and internal quotation marks omitted); *see also Lyons v. Allen,* 11 App.D.C. 543, 549–50, 552 (1897); *Kemp v. Weber,* 180 Md. 362, 24 A.2d 779, 780 (1942).

Because a party to a contract "can not be allowed both to affirm and disaffirm," *Lyons, supra,* 11 App.D.C. at 552, one who seeks rescission must "indicate to the other party at least the intent to restore the parties to the relative positions which they would have occupied if no such contract had ever been made, and this as soon as the disenchanted party learns of the facts." *Lazorcak v. Feuerstein,* 273 Md. 69, 327 A.2d 477, 481 (1974) (citations omitted); see also *Cummings v. Jack Hurwitz, Inc.,* 204 A.2d 332, 333 (D.C.1964) (party seeking to rescind must do so within a reasonable time after discovery of facts justifying rescission). "Prompt election and restoration of the innocent party to its former position were essential." *Milford Yacht Realty Co. v. Milford Yacht Club,* 136 Conn. 544, 72 A.2d 482, 485 (1950).

In the present case, Tenant had already accepted and enjoyed all of the benefits of the agreement when she first challenged its validity. Her nine months of post-settlement residence on the premises had already expired. As the Supreme Court explained more than a century ago,

> [a] court of equity is always reluctant to rescind, unless the parties can be put back in statu quo. If this cannot be done, it will give such relief only where the clearest and strongest equity imperatively demands it.

*Grymes v. Sanders,* 93 U.S. 55, 62, 23 L.Ed. 798 (1876). "The right of rescission when restoration is impossible must be supported by urgent reasons." *Record v. Rochester Trust Co.,* 89 N.H. 1, 192 A. 177, 182 (1937).

We conclude as a matter of law that there are no "urgent reasons" for permitting Tenant to repudiate her agreement after having remained silent while accepting its fruits. Tenant knew that Landlord proposed to market the property; it was so provided in the

---

**3.** In this case, the word "retained" would describe the situation more accurately.

Stipulation of Settlement. She did not move to set aside the agreement until after she had enjoyed its benefits. In these circumstances, she cannot be relieved of her obligations under the Stipulation of Settlement.

## V.

The TOTPS provides, in pertinent part, that "[a]n owner shall not request, and a tenant may not grant, a waiver of the right to receive an offer of sale under this subchapter." D.C.Code § 45–1636.[4] Tenant seeks to invoke the protections of this statute, but there is nothing in the record to suggest that Landlord ever requested a waiver, or that Tenant ever granted one. The Stipulation of Settlement did not preclude Tenant from filing a suit to enforce her rights under the TOTPS when she learned of the contract of sale with a third party. If there was a violation of the TOTPS at all—a question we do not decide, see note 1, *supra*—then it was effected by Landlord's failure to comply with her substantive obligation to provide Tenant with notice and an opportunity to purchase the accommodation, *see* D.C.Code § 45–1631(a), rather than by noncompliance with the anti-waiver provision, *id.* § 45–1636.

## VI.

█ Even assuming, without deciding, that Landlord did not discharge her responsibilities under the TOTPS, we conclude, for the reasons stated in Parts III, IV, and V of this opinion, that such noncompliance does not warrant setting aside Tenant's obligations under the Stipulation of Settlement. Accordingly, the judgment is

*Affirmed.*[5]

---

4. Section 45–1636 is quoted in full in Part III of this opinion.

5. Tenant contends in the alternative that the trial judge erred in granting judgment without an evidentiary hearing because the judge's ruling was grounded on her apparent finding that the contract of sale had "fallen through." Tenant points out, correctly, that this finding was based on a representation by Landlord's counsel, and that such a representation was not sufficient. *Cf.*

Super.Ct.Civ.R. 56(e). However, our disposition of the case, as set forth in Parts III through V of this opinion, sustains the entry of judgment of possession whether the contract fell through or not, and Tenant's alternative contention therefore is academic. We are, of course, free to affirm the trial judge's decision on grounds different from those on which the judge relied in her ruling. *Sheetz v. District of Columbia,* 629 A.2d 515, 519 n. 5 (D.C.1993).