Dorothy C. THORN, Appellant,

v.

James T. WALKER, et al., Appellees.

No. 05–CV–99.

District of Columbia Court of Appeals.

Argued Dec. 5, 2006.

Decided Dec. 21, 2006.

Karl W. Carter, Jr., for appellant.

Robert Clayton Cooper, Washington, DC, for appellee.

Before REID and BLACKBURNE–RIGSBY, Associate Judges, and SCHWELB, Senior Judge.

REID, Associate Judge:

Appellant Dorothy C. Thorn appeals from the trial court's denial of her motion for a new trial relating to the court's final judgment and order granting appellees' (James T. Walker and Erika Walker) request for specific performance of a contract for the sale of real property by Ms. Thorn. We dismiss this appeal on the ground that it is moot.

## FACTUAL SUMMARY

On May 22, 2002, Ms. Thorn executed a contract for the sale of her residential property, located on Crittenden Street in the Northwest quadrant of the District of Columbia, to the Walkers for the sum of $190,000.00.[1] To secure the contract, the Walkers paid a deposit of $1,000.00 to Ms. Thorn. The contract specified that the Walkers would apply for financing within seven days after the ratification of the contract. In that regard, the Walkers obtained a letter from Marvin Miles of Allied Home Mortgage Capital Corporation ("Allied"), dated May 27, 2002, stating that they were pre-approved for a loan of $184,300.00. The contract was contingent on a letter from a lender approving financing for the transaction. The Walkers were required to deliver the letter to Ms. Thorn no later than 192 days after ratification of the contract. Subsequently, Ms. Thorn, who had lived in the home for approximately thirty years, changed her mind. She refused to allow the Walkers access to the Crittenden Street property so that an inspection could be conducted and an appraisal prepared. In addition, she unsuccessfully tried to refund the Walkers' $1000.00 security deposit in October 2002.

---

1. Subsequent to the execution of the contract, the value of the Crittenden property increased considerably.

The Walkers sued for specific performance of the sales contract on November 25, 2002. A bench trial took place on November 1 and 3, 2004, after which the trial court orally determined that "there was a binding, valid contract reached on May 22nd, 2002 between [the Walkers] and [Ms. Thorn] to purchase [Ms. Thorn's] home . . . ;" that "[a]ll of the material terms [had] been agreed to . . .—the property that was to be sold, the price, the parties, the date of settlement, the means of payment, what the . . . respective obligations of the parties were, and what the penalties would be upon default of one party or the other. . . ." The court was not persuaded by Ms. Thorn's defenses, including her claims that (1) further negotiations were to take place; and (2) the contract was invalid because one page had not been signed by Mr. Walker, even though all of the other pages containing the material terms of the contract had been initialed by Mr. Walker. The court also concluded "that at the time the contract was agreed to, May 22nd 2002," the Walkers and Ms. Thorn "fully intended to be bound" by it; and that the Walkers "did everything they were obligated to do under [the] contract."

Once the parties submitted their positions as to the proper remedy, the trial court issued a written final judgment and order on November 30, 2004, granting specific performance to the Walkers (to occur no later than May 31, 2005) but indicating that settlement on the sale should not take place before January 31, 2005. In addition, the order specified other relief.

On December 17, 2004, Ms. Thorn filed a motion for a new trial, which was based on an affidavit from the General Counsel of Allied, stating that a search of the company's records "revealed no evidence of any loan application being submitted at any time by Mr. and Mrs. Walker to [the company's] Richmond office," and further,

the company's "Human Resources Department could not locate an employee known as Marvin Miles [the person from Allied who had provided the Walkers with a pre-approval letter]; it appears that he was not one of our employees." Ms. Thorn wanted to establish through the affidavit that there was no valid, binding contract because the Walkers failed to satisfy a term and condition of the contract. The Walkers opposed the motion.

In an order docketed on January 5, 2005, the trial court denied Ms. Thorn's motion for a new trial. The trial court declared that the motion was timely filed, but that "the general counsel's affidavit is not properly considered 'newly discovered evidence' " because the Walkers "maintained throughout the litigation that they obtained pre-approval of a mortgage loan application through Mr. Miles and Allied [ ]. . . ." Therefore, Ms. Thorn "easily could have contacted Allied's general counsel and conducted whatever other investigation was necessary in advance of trial to determine whether she had any basis upon which to challenge the assertions of [the Walkers] and Mr. Miles." However, no question was raised about Mr. Miles "until a status hearing on November 19, 2004. . . ." The court stated that it "found" the Walkers and Mr. Miles "to be credible witnesses, and the uncross-examined affidavit of the general counsel [did] nothing to change the Court's view. . . ." Moreover, the court concluded that "the general counsel's affidavit does not establish that [the Walkers] made a misrepresentation or committed fraud or other misconduct."

## ANALYSIS

■ We first consider the argument of the Walkers that this appeal is moot since Ms. Thorn sold the Crittenden Street property to them and accepted payment, and because that property has been in

their possession since around January 31, 2005. Furthermore, they argue, Ms. Thorn has not requested any particular relief from this court, and indeed "no just or appropriate relief could be requested or ordered in light of the subsequent transaction between the parties." Ms. Thorn did not address the assertion of mootness in her reply brief, but during oral argument her counsel indicated that the relief sought might be the return of the Crittenden Street property. We have not had an occasion to consider the issue of mootness under the precise circumstances of this case. Therefore, we set forth some guiding legal principles distilled not only from our cases but also those in other jurisdictions.

■ A case is moot if the parties have presented no justiciable controversy to the appellate court. "Although not bound strictly by the 'case or controversy' requirements of Article III of the U.S. Constitution, this court does not normally decide moot cases." *Cropp v. Williams*, 841 A.2d 328, 330 (D.C.2004) (citing *District of Columbia v. Group Ins. Admin.*, 633 A.2d 2, 12 (D.C.1993)). "A case is moot when the legal issues presented are no longer 'live' or when the parties lack a legally cognizable interest in the outcome." *Id.* (citing *Murphy v. Hunt*, 455 U.S. 478, 481, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982)); *see also Brownlow, Commissioners of the District of Columbia v. Schwartz*, 261 U.S. 216, 217, 43 S.Ct. 263, 67 L.Ed. 620 (1923) (case moot because "there is now no actual controversy between the parties—no issue on the merits which this Court can properly decide."). Moreover, there is no justiciable controversy if the court is asked to decide only abstract or academic issues. *See Spingarn v. Landow & Co.*, 342 A.2d 41, 42 (D.C.1975) ("appellate courts will not decide abstract questions . . . ."); *see also Not in Montana: Citizens Against CI–97 v. Montana*, 334 Mont. 265, 147 P.3d 174, 176 (2006), 2006 Mont. Lexis 588 at 6 ("A justiciable controversy is limited . . . to 'one upon which the judgment of the court may effectively operate,' as distinguished from a debate or argument that proposes a purely academic conclusion, or advisory opinion."); *Lewis Investments, Inc. v. City of Iowa City*, 703 N.W.2d 180, 183 (Iowa 2005) ("Ordinarily an appeal is deemed moot if the issue becomes nonexistent or academic and, consequently no longer involves a justiciable controversy.") (citation omitted).

■ Furthermore, if a party has requested no particular relief on appeal, or the appellate court can provide no effective relief, the case is moot. "In deciding whether a case is moot, we determine whether this [c]ourt can fashion effective relief." *Graveyard Creek Ranch, Inc. v. Bell*, 327 Mont. 491, 116 P.3d 779, 781 (2005). Moreover, as we reiterated in *Settlemire v. District of Columbia Office of Employee Appeals*, 898 A.2d 902 (D.C. 2006), " 'it is well-settled that, while an appeal is pending, an event that renders relief impossible or unnecessary also renders that appeal moot.' " *Id.* at 905 (quoting *Vaughn v. United States*, 579 A.2d 170, 175 n. 7 (D.C.1990)); *see also Evans v. Family Sav. & Loan Ass'n of Virginia*, 481 A.2d 1309, 1310 (D.C.1984) ("[T]he appeal is moot because there is no way we can grant effective relief."). In that regard, the sale of property generally precludes effective relief. *See Lathrop v. Sakatani*, 111 Hawai'i 307, 141 P.3d 480, 486 (2006) ("[T]he sale of the property prevents the appellate court from granting any effective relief."). Nevertheless, a party may escape the doctrine of mootness by taking appropriate action such as seeking a stay of a court order directing the sale of property. *Id.* ("[I]t is appellant's burden to seek a stay if post-appeal trans-

actions could render the appeal moot.") (citations omitted).

Here, after the trial court rendered final judgment in favor of the Walkers and later denied Ms. Thorn's motion for a new trial, other than filing a notice of appeal, Ms. Thorn sought no protective measure such as a stay to postpone enforcement of the judgment. Rather, she elected to comply with the judgment, selling the property to the Walkers as directed and accepting the purchase price; funds from the purchase were not placed in escrow pending the outcome of the appeal. In two of our prior cases involving property and landlord and tenant issues, we concluded that application of the mootness doctrine was inappropriate. In *Brown v. Hornstein*, 669 A.2d 139 (D.C.1996), a landlord moved to gain possession of residential property due to the tenant's late and delinquent rent payment history. After the tenant filed a petition with the Rental Accommodations and Conversion Division of the District of Columbia Rental Housing Commission, the landlord and tenant reached a settlement agreement under which the tenant had to vacate the premises by a certain date, and was required to cooperate with the landlord in his efforts to sell the property. Subsequently, the landlord entered into an agreement for the sale of the property to a third party, but failed to give the tenant the first right of refusal, as mandated by District law. On appeal, the landlord sought dismissal on the ground that the appeal was moot. However, we declared that "a tenant's involuntary departure from the landlord's property does not render an appeal moot." *Id.* at 141 (citing *Joyner v. Jonathan Woodner Co.*, 479 A.2d 308, 310 (D.C.1984)) (other citation omitted). We further concluded that because the record did not "reflect the alleged sale of the premises," the case could not be dismissed. *Id.* ("[N]owhere in the record is there any evidence that the property has

been sold."). The second case, *Wright v. Walsh*, 856 A.2d 1108 (D.C.2004), concerned a rental property. The owners decided to occupy the property themselves and hence served on the tenant the appropriate ninety-day notice to vacate the premises. The tenant claimed that the ninety-day notice was waived because the landlord agreed to sell the property to her. After a hearing, the trial court granted possession of the property to the landlord. The tenant appealed and the landlord claimed that the appeal was moot because the residential property had been sold. However, as in *Brown, supra*, "[w]e reject[ed] [the landlord's] contention that [the] appeal [was] moot because ... the parties [had] not moved 'to supplement the record on appeal to reflect the alleged sale of the premises.'" *Wright*, 856 A.2d at 1110 (quoting *Brown*, 669 A.2d at 141) (other citation omitted).

The case before us is different from *Brown* and *Wright* because the record reflects that the Crittenden Street property was sold to the Walkers as required by the trial court's final judgment and order. Moreover, on this record there is no indication that Ms. Thorn involuntarily sold the property to the Walkers after the trial court's judgment, and that she protested the sale by seeking a stay of the trial court's final judgment and order, or took other protective measures. Nor are we presented with a case concerning money damages where relief at the appellate level might not be foreclosed. *See Martin Dev. Co. v. Keeney Constr. Co.*, 216 Mont. 212, 703 P.2d 143 (1985); *see also Graveyard Creek, supra*, 116 P.3d at 781–82. Thus, we appear to be presented with a classic case of a moot appeal. That is, we discern no justiciable or live controversy, only an abstract, academic issue. *See Cropp, supra*, 841 A.2d at 330; *Spingarn, supra*, 342 A.2d at 42; *see also Lewis Investments*,

*supra,* 703 N.W.2d at 183; *Brownlow, supra,* 261 U.S. at 217, 43 S.Ct. 263. Moreover, Ms. Thorn seeks no particular relief in the appeal papers presented to this court. During oral argument, when pressed on the question of the relief sought, counsel for Ms. Thorn took the position that she might ask the court to return the Crittenden Street property to her.[2] But on this record that is not possible. The trial court found that Ms. Thorn entered into a valid, binding contract with the Walkers for the sale of the Crittenden Street property. That property has been sold and she no longer has any right to possess it. *See Lathrop, supra,* 141 P.3d at 486; *see also Turner, supra,* 915 P.2d at 804 ("[W]hen there is no effective relief this [c]ourt can fashion, the appeal is moot."). As the Supreme Court said in *Brownlow,* "[a] reversal would ostensibly avoid an event which had already passed beyond recall." *Id.* at 217, 43 S.Ct. 263.

■ The Crittenden Street property may well have a sentimental value for Ms. Thorn since, as the record reflects, she lived there for about thirty years and worked hard to acquire and pay for the home with her husband. But as we recognized in *Settlemire, supra,* the "desire for vindication is ... inadequate to show that [the] appeal is not moot. The 'legal interest' at stake 'must be more than simply the satisfaction of a declaration that a person was wronged.' " 898 A.2d at 907 (citation omitted). "While the emotional satisfaction of a victory may be important to a litigant, 'emotional involvement in a lawsuit is not enough to meet the case-or-controversy requirement; were the rule otherwise, few cases could ever become moot.' " *Id.* (quoting *Ashcroft v. Mattis,*

431 U.S. 171, 173, 97 S.Ct. 1739, 52 L.Ed.2d 219 (1977)). Thus, whatever emotional or sentimental attachment Ms. Thorn continues to have for her former home, it is not sufficient to circumvent the mootness doctrine.

In short, this appeal must be dismissed because it is moot for the reasons stated. Our conclusion is supported by a similar case, *Schuppener v. Bruno,* 395 So.2d 1234 (Fla.App.1981), where the court ordered specific performance of a purchase and sale agreement. After the court entered its final judgment, and the notice of appeal was filed, "the parties closed the transaction pursuant to court order, exchanging funds and a mortgage for a warranty deed." *Id.* at 1235. There, the court stated: "Appellees are in possession and have renovated the premises. Appellants have accepted the purchase price and recorded a mortgage. Under these circumstances the issues in [this] appeal ... appear to us to be moot." *Id.*

■ Finally, even assuming that Ms. Thorn's appeal is not moot, we discern no legal principle on which we may reverse the trial court's judgment regarding either the denial of her motion for a new trial or the trial court's final judgment and order on the merits. We are not persuaded by Ms. Thorn's assertion that the affidavit of the Allied general counsel, pertaining to Mr. Miles and no record of any application from the Walkers for loan pre-approval, is newly discovered evidence under Super, Ct. Civ. R. 60(b).

■ "This court will not reverse the denial of a motion for a new trial in the absence of a clear showing of abuse of discretion in the trial court." *Derrington*

2. Despite the fact that the Walkers argued in their brief that Ms. Thorn's appeal was moot, appellant cited no authority in her reply brief showing that she still has a live case. Indeed she made no response at all to appellees' mootness argument. Hence, she has effectively conceded that her appeal is moot.

*v. United States,* 488 A.2d 1314, 1339 (D.C. 1985) (citation omitted); *see also Wallace v. Warehouse Employees Union # 730,* 482 A.2d 801, 810 (D.C.1984). Super. Ct. Civ. R. 60(b) provides in pertinent part:

On motion and upon such terms as are just, the Court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 50(b).....

In *Madison v. Superior Iron Works and Hyman/Clark Constr. Group, Inc.,* 746 A.2d 343 (D.C.2000), we discussed what a party must show in order to obtain a new trial based on newly discovered evidence:

[T]he evidence must be in fact newly discovered, that is, discovered since the trial; it must be shown that it was not due to want of diligence that the movant did not discover the evidence sooner; the evidence relied on must not be merely cumulative or impeaching; and it must be such as would probably produce a different verdict if a new trial were granted.

*Id.* at 347–48 (citing *Imhoff v. Walker,* 51 A.2d 309, 312 (D.C.1947)) (other citations omitted). We agree with the trial judge here that "the [Allied] general counsel's affidavit is not properly considered 'newly discovered evidence'" because Ms. Thorn "easily could have contacted Allied's general counsel and conducted whatever other investigation was necessary in advance of trial to determine whether she had any basis upon which to challenge the assertions of [the Walkers] and Mr. Miles." We also agree with the trial court that "the general counsel's affidavit does not establish that [the Walkers] made a misrepresentation or committed fraud or other misconduct." In fact, there is nothing in the record before us even remotely hinting that the Walkers approached the purchase of the Crittenden Street property in a fraudulent manner. They entered into a valid, binding contract, satisfied their obligations under the contract of sale, and paid the stated purchase price. Ms. Thorn in turn accepted the purchase price and conveyed the property to the Walkers.

Accordingly, for the foregoing reasons, we dismiss Ms. Thorn's appeal because it is moot.

*So ordered.*